

**Keith J. Gutstein, Esq.**
Email: ERosenblum@kdvlaw.com

Kaufman Dolowich & Voluck, LLP
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Telephone: 516.681.1100
Facsimile: 516.681.1101
www.kdvlaw.com

November 3, 2020

**VIA ECF**
Magistrate Judge Debra Freeman
United States District Court
Southern District of New York
500 Pearl Street
Brooklyn, NY 10007

      Re:   *Juan Pimental v. Pax Ventures LLC et al.*
               **Index No.: 19-cv-1846(ALC)(DF)**

Dear Judge Freeman:

      This office represents Pax Ventures, LLC, Borden Kitchen, LLC, 740 Roast Corp., Alexander Xenopoulos, Peter Xenopoulos, AXP 40th Street Corp., George Lotfala and Maher Lotfala (collectively, the "Defendants") in the above-referenced matter. In accordance with the holding in *Cheeks v. Freeport Pancake House, Inc.*, 2015 WL 4664283 (2d Cir. 2015), this letter motion is submitted jointly with Plaintiff, Juan Pimentel, to respectfully request that Your Honor approve the within Settlement Agreement and Release (the "Agreement") between the Parties, annexed hereto as Exhibit A.

      The Agreement represents a good faith effort between experienced labor and employment counsel to negotiate an action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), resulting in a settlement which provides Plaintiff with a satisfactory recovery of his damages under applicable law.

**I.**    **Plaintiff's Allegations and Defendants' Responses**

      On February 27, 2019, Plaintiff, represented by counsel herein, commenced a wage and hour lawsuit against 740 Roast Corp., Borden Kitchen, LLC, Pax Ventures, LLC, Alexander Xenopoulos, and Peter Xenopoulos. On August 22, 2019, Plaintiff filed an Amended Complaint in this action and added AXP 40th Street Corp., George Lotfala and Maher Lotfala as defendants to the action. The wage and hour lawsuit alleges violations of the FLSA and NYLL. Specifically, Plaintiff alleges that Defendants employed him as a non-exempt cook and that, throughout his employment, he continuously worked fifty-six hours per workweek earning $975 for "all hours worked." Specifically, Plaintiff claims that he worked six days per week, Monday through Friday from 4:00 a.m. to 2:00 p.m.; and Saturday from 4:00 a.m. to 10:00 a.m. In addition, though no

*Magistrate Judge Debra Freeman*
*November 3, 2020*
*Page 2*

details are offered as to when such hours were worked, Plaintiff claims that he "occasionally" worked more than ten hours in a shift. Finally, Plaintiff claims that he was not furnished with accurate wage statements in violation of the NYLL. As a result of the foregoing, Plaintiff claims that Defendants failed to: (A) pay Plaintiff overtime wages in violation of the FLSA and NYLL; (B) pay Plaintiff spread-of-hours pay in violation of the NYLL; and (C) provide Plaintiff with accurate wage statements as required by NYLL § 195(3).

Defendants dispute the allegations asserted by Plaintiff. To begin, it is Defendants' position that Plaintiff is not entitled to any overtime wages or spread of hours pay because he was at all relevant times properly classified as an exempt executive employee. Under the U.S. Department of Labor regulations, Plaintiff meets the executive exemption because: (1) he was compensated on a salary basis of at least $455 per week during the relevant period; (2) his primary duty was management of the Corporate Defendants' kitchen; (3) he customarily and regularly directed the work of two or more employees; and (4) he had the authority to hire or fire other employees and his suggestions and recommendations regarding kitchen staff matters were given particular weight. Furthermore, Plaintiff also meets the applicable exemption standard set under the NYLL and its regulations. Naturally, Plaintiff disputes Defendants' contention that he was an exempt executive. Plaintiff is confident that if forced to a trial of this matter, Defendants would not have been able to establish their exemption defense for a variety of reasons, not the least of which is that Plaintiff's "primary" job was not the management of the kitchen, but that of a cook. Nevertheless, Plaintiff acknowledges that the defense posed a significant trial risk, which, if established, would have virtually entirely eliminated Plaintiff's wage claims.

Additionally, it is Defendants' position that Plaintiff grossly exaggerates the scope of his claims. Defendants' records demonstrate that Plaintiff worked a limited amount of overtime, if at all. Moreover, because the parties had a clear and mutual understanding that Plaintiff's salary covered all hours worked in the week, in the event that Plaintiff was entitled to overtime, his damages are limited to one-half of his regular hourly rate, not time-and-a-half his regular rate of pay. Additionally, for the period of time in which Plaintiff was employed by Borden Kitchen, it is important to note that Borden Kitchen was <u>not</u> covered by the Hospitality Industry Wage Order. Rather, the Miscellaneous Industry Wage Order ("MIWO") governs that establishment as it served as a commercial kitchen, not a restaurant. To that end, under the MIWO, a salaried employee's regular hourly rate of pay is "determined by dividing the total hours worked during the week into the employee's total earnings." § 142-2.16. Accordingly, even if a trier of fact were to determine that Plaintiff was non-exempt, it is Defendants' position that the available damages would be limited to the half rate for all overtime hours worked as per the MIWO. Lastly, the MIWO does not require payment of spread of hours in situations where an individual is paid well above the minimum wage rate. As such, Plaintiff would not be entitled to spread of hours pay.

With regard to Plaintiff's NYLL 195(3) claims, if Plaintiff was properly classified as exempt, Defendants did not violate the statute and there would be no recovery on this claim whatsoever.

In sum, there is a bona fide dispute between the Parties regarding the merits of Plaintiff's wage and hour claims. The instant settlement constitutes the Parties' effort to resolve same in an amicable fashion through arm's length bargaining.

## II.   Settlement Negotiations

On November 6, 2019, Plaintiff submitted a settlement demand in the amount of approximately $271,007.50. The demand was wholly based on Plaintiff's maximum possible recovery if he were able to establish each and every claim and did not account for any of the aforementioned arguments comprising Defendants' position. The initial demand was calculated assuming that Plaintiff was owed time and one-half his regular rate of pay for all overtime hours worked in a week, which he alleges was approximately 16 hours of overtime per week for approximately 312 weeks (or six years).

The Parties proceeded to mediation on December 17, 2019 with mediator Evan J. Spelfogel, Esq. While at the mediation, Defendants and Plaintiff spent considerable time engaged in settlement discussions with the assistance of Mr. Spelfogel. Unfortunately, the Parties did not reach a resolution in principle at the mediation; however, the Parties continued to engage in settlement discussions thereafter through their respective counsel. Shortly thereafter, the COVID-19 pandemic hit New York, and businesses were mandated to be closed under Governor Cuomo's Executive Order. This devastated Defendants as their business was forced to close. In fact, Defendants' businesses have closed permanently, remain temporarily closed and/or are engaging in a mere fraction of the business than they did the year before due to decreased foot traffic resulting from people leaving New York City and/or choosing to work remotely. With each party recognizing the risks associated with litigation during and after an uncertain time for all businesses, and especially the hospitality industry in New York City, the Parties came to an agreement to settle the case.[1] Specifically, following extensive negotiations, the Parties reached a settlement in the amount of $40,000.00, inclusive of attorneys' fees and costs, the total amount which will be paid out over a period of eight (8) months.

## III.   The Settlement is Fair and Reasonable

The Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 2015 WL 4664283 (2d Cir. 2015) provides that stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the Department of Labor. An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the

---

[1]   Also, during the course of the pandemic, Defendant Maher Lotfala passed away from COVID-19. As a result, Plaintiff has agreed to file a Stipulation of Dismissal With Prejudice for all claims against Maher Lotfala along with this motion for judicial approval. Moreover, to prevent any disturbance to George Lotfala during this unprecedented time, Plaintiff has agreed to file a Stipulation of Dismissal Without Prejudice for all claims against George Lotfala and to waive any requirement that he be a signatory to the Settlement Agreement. Once the Settlement Amount is paid in full, Plaintiff agrees to file a Stipulation of Dismissal With Prejudice for all claims against George Lotfala.

*Magistrate Judge Debra Freeman*
*November 3, 2020*
*Page 4*

Parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

It is apparent that the Agreement in this matter is a fair and reasonable resolution of the bona fide disputes between the Parties. This is because the Agreement: (1) enables the Parties to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses and accounts for the risks in proceeding with the litigation; and (2) is the product of arm's-length bargaining between experienced labor and employment counsel which was completely devoid of any semblance of fraud or collusion. *See gen. Wolinsky*, 900 F. Supp. 2d at 335. Accordingly, it is respectfully requested that the Agreement be approved in its entirety.

*The Risk and Expenses Faced by the Parties*

Both Parties in this matter faced substantial risks in moving forward in this litigation. Plaintiff's claim that he was improperly classified as exempt was to be contested. In the event that a trier of fact determined that Plaintiff was actually non-exempt, Plaintiff's claim of working 56 hours per week would also be contested. Finally, Plaintiff faced the prospect of waiting many months, if not years, for the matter to proceed through trial. Moreover, there remains a risk to Plaintiff that Defendants may no longer be viable even if he was successful at the end of the litigation. At this stage of the proceedings, Plaintiff is obtaining a recovery without having to go through the time-consuming and risky process of litigating his claims.

Conversely, while Defendants were confident that they would be able to challenge Plaintiff's claims, they were also mindful of the risk that Plaintiff may have prevailed on some claims, and that even if Defendants were successful, it would have only occurred after a protracted litigation and at a significant cost—a cost they simply cannot bear given the current pandemic. The costs of litigation and prospects of liability for Defendants clearly weighed in favor of early resolution. Accordingly, both Parties faced substantial risks in proceeding forward with the litigation, which weighs in favor of approval of the Agreement.

*The Agreement was the Product of Arm's-Length Bargaining Devoid of Fraud or Collusion*

It cannot be disputed that the Agreement was the product of legitimate bargaining between experienced labor and employment counsel which was devoid of any resemblance of fraud or collusion. Plaintiff's counsel zealously advocated on behalf of his client throughout,

*Magistrate Judge Debra Freeman*
*November 3, 2020*
*Page 5*

from negotiating the amount of the settlement, to the terms of same. Similarly, Defendants' counsel worked to ensure that Defendants reached a settlement where Plaintiff was not receiving any more than he may be entitled to in the event he was successful at trial, while taking into account the expensive cost of a lengthy trial. The Parties also participated in a mediation through the Court's Mediation Program, and though unsuccessful at the time, continued to have productive discussions thereafter. The Agreement constitutes an effort by experienced labor and employment counsel for both Parties to resolve the dispute under the best possible circumstances for their respective client. Accordingly, the Agreement should be approved by the Court.

**IV.**     **Plaintiff's Application for Attorney's Fees Should Be Approved**

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts have recognized the "percentage of the fund" method as an appropriate means by which to compensation plaintiff's attorneys in FLSA settlements. *See Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); *see also Hiang v. Chiang*, No. 16 Civ. 1129, 2016 U.S. Dist. LEXIS 142670, at *7-8 (S.D.N.Y. Oct. 14, 2016) (awarding attorneys' fees of one-third of settlement amount in FLSA case); *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one-third of gross settlement); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of the FLSA settlement amount); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) ("a fee that is one-third of the fund is typical" in FLSA cases).

If the Court were to analyze counsel's fees on a lodestar basis, the Court should still approve the Agreement. Counsel's lodestar is slightly more than the fees requested herein. A copy of Cilenti & Cooper, PLLC's billing records for work performed on this matter is being provided under separate cover. Cilenti & Cooper, PLLC's requested rates ($400 per hour for lawyers and $100 for paralegal) have routinely been approved as reasonable for more than 10 years. *See Rescalvo v. BTB Events & Celebrations Inc.*, 16 Civ. 7647 (PAE) (S.D.N.Y. Jan. 24, 2018); *Gonzalez, et al. v. Crosstown Diner Corp., et al.;* No. 16 Civ. 2544 (BCM) (S.D.N.Y. 2017); *Sierra v. Skyline Gourmet Deli*, No. 15 Civ. 3319 (SN) (S.D.N.Y. 2016); *Romero v. Lu Woodside Mini Mall, Inc.*, No. 15 Civ. 5030 (PK) (E.D.N.Y. 2016); *Catalan, et al. v. H&H Kim Corp., et al.*, No. 15 Civ. 7443 (DF) (S.D.N.Y. 2016).

Plaintiffs' attorney, Justin Cilenti, is the founding partner of Cilenti & Cooper, PLLC, who graduated from Pace University School of Law with a J.D. Degree in 1997, In the twenty-three (23) years since being admitted to practice in the State of New York and the Southern District of New York, Mr. Cilenti has litigated a multitude of cases from inception through

*Magistrate Judge Debra Freeman*
*November 3, 2020*
*Page 6*

disposition, including trial. He practices in the New York State Supreme Court, the Appellate Divisions of the New York Supreme Court, and the Federal District Courts for the Southern and Eastern Districts of New York, as well as the Federal District Courts of New Jersey.

**V.**     **Conclusion**

For all of the reasons set forth above, the Parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

                                              Respectfully submitted,
                                              Kaufman Dolowich & Voluck, LLP

                                              Keith Gutstein

cc:     All counsel (*via* ECF)

4829-3857-7104, v. 1